**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**OLGA I. GREEN,**

**Plaintiff,**

**-vs-**                                                                        **Case No. 6:11-cv-462-Orl-KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

_____

**ORDER**

This cause came on for consideration without oral argument on the Complaint filed

by Olga I. Green seeking review of the final decision of the Commissioner of Social Security

denying her claim for social security benefits.  Doc. No. 1.  The Commissioner answered

the Complaint and filed a certified copy of the record before the Social Security

Administration (SSA).  Doc. Nos. 17, 18, 28.  Pursuant to the consent of the parties, this

matter has been referred to the undersigned for disposition under 28 U.S.C. § 636(c).  Doc.

Nos. 19, 21.

**PROCEDURAL HISTORY.**

Green filed an application for disability benefits under the Federal Old Age, Survivors

and Disability Insurance Programs ("OASDI" or the "Act"), 42 U.S.C. § 401 *et seq.*, alleging

that she became disabled on February 1, 2007.  R. 80.  Her application was denied

originally and on reconsideration.  At Green's request, an Administrative Law Judge ("ALJ")

held a hearing on December 12, 2008.  Green, represented by an attorney, testified at the

hearing.  R. 32 -56.  No vocational expert witness testified.

After considering the evidence in the record, the ALJ found that Green was insured

through December 31, 2008, and that she had not engaged in substantial gainful activity

since February 1, 2007.  R. 22.  The ALJ concluded that Green had disorders of the back

and a schizoaffective disorder, depressive type, which were severe impairments.  R. 22.

These impairments did not meet or equal any of the listed impairments.  R. 23.

The ALJ determined that Green had the residual functional capacity ("RFC") to do

the following:

> [P]erform medium work . . . because she could lift/carry 50
> pounds occasionally and up to 25 pounds frequently.  She could
> sit, stand and/or walk for about 6 hours in an eight hour
> workday.  She had no limitations for pushing/pulling with her
> upper or lower extremities, such as in the operation of hand or
> foot controls.  She had no postural limitations because she could
> frequently climb, balance, stoop, kneel, crouch and crawl.  She
> had no manipulative, visual, communicative or environmental
> limitations.  From the mental standpoint, she retained the ability
> for learning, understanding, remembering, and carrying out
> simple work-related instructions/tasks; maintaining adequate
> attention or concentration spans for at least 2 hour intervals;
> using judgment in making work related decisions; dealing with . .
> . adapting to simple and routine changes in work environments
> and settings; and, relating and interacting appropriately with
> others, such as supervisors and co-workers.

R. 26.  In reaching this conclusion, the ALJ gave very little weight to the opinion of Luis P.

Longo, M.D.  The ALJ indicated that he was persuaded by the report completed by Zaida

Boria, M.D.  R. 24.  The ALJ discussed record evidence of mental health treatment, but he

did not indicate what weight he gave to the various treating and examining professionals'

opinions.  R. 24-26.  The ALJ wrote that he "must give greater weight to the opinion of the

State Agency's expert medical and other expert personnel regarding the severity of the claimant's physical and mental impairments and residual functional capacity."  R. 29.

The ALJ concluded that Green could not return to any of her past relevant work.  R. 29.  While the ALJ recognized that under his RFC assessment Green could perform "a limited range of medium work," R. 29, he determined that the nonexertional limitations "had little or no effect on the occupational base of unskilled medium work."  R. 30.  The ALJ cited no legal or evidentiary support for this finding.

The ALJ relied exclusively on Medical-Vocational Guideline 203.26 as a framework and the opinion of state agency disability reviewers to conclude that there was work Green could perform in the national economy, specifically produce weigher, silver wrapper and table worker.  R. 30.  Accordingly, he determined that Green was not disabled.

Green sought review of the ALJ's decision by the Appeals Council.  On February 2, 2011, the Appeals Council issued a decision finding no basis for changing the ALJ's decision.  R. 2.  Green seeks review of that decision by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Green having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## ANALYSIS.

Green asserts that substantial evidence does not support the ALJ's RFC finding, that the ALJ erred by failing to consider side effects of her medication, and that the ALJ improperly relied on the Medical-Vocational Guidelines at Step Five of the sequential evaluation. Doc. No. 25. I will address only the last issue in detail because it is dispositive.

As the ALJ found, the medical records reflect that Green has both exertional and nonexertional limitations arising from her impairments. In this circuit, if the ALJ finds that a claimant's nonexertional impairments do not significantly limit the claimant's basic work skills, the ALJ may rely on the Medical-Vocational Guidelines, often referred to as the Grids, at step five of the sequential evaluation. "However, if the ALJ finds that the claimant's nonexertional impairments significantly limit the claimant's basic work skills, otherwise stated as precluding the wide range of work at a given exertional level, then exclusive reliance on the Grids is not permitted." *Baker v. Comm'r of Soc. Sec.*, No. 6:07-cv-1138-Orl-28KRS, 2008 WL 3980986, at * 6 (M.D. Fla. Aug. 22, 2008). An ALJ's decision that nonexertional impairments do not preclude a wide range of work at a given exertional level must be supported by substantial evidence in the record. *Id.*

In this case, the ALJ concluded that the RFC he assigned, which included nonexertional limitations, would permit Green to perform "a limited range of medium work." R. 29. Nevertheless, the ALJ concluded that the nonexertional limitations "had little or no effect on the occupational base of unskilled medium work." R. 30. The ALJ provided no evidentiary or legal support for that opinion. The ALJ cited to findings of state agency disability reviewers regarding jobs Green could perform. R. 30. These findings are also not supported by citation to any record evidence or legal authority that supported the reviewers' conclusions. *See* R. 172.

While there is some authority indicating that a person who can perform simple, routine tasks may be able to perform unskilled work, *see, e.g., Dawson v. Comm'r of Soc. Sec.*, No. 6:11-cv-1128-Orl-28KRS, 2012 WL 1624267, at \*2-3 (M.D. Fla. May 9, 2012), the RFC in this case included nonexertional limitations beyond simple work.  The ALJ found that Green could only maintain adequate attention and concentration for "at least 2 hour intervals."  R. 26.  The Commissioner cites no authority supporting the argument that the limitation on the length of time Green could maintain adequate attention and concentration would still permit her to perform a wide range of work at a medium level of exertion.

Under these circumstances, exclusive reliance on the Medical-Vocational Guidelines at step five was erroneous.  The ALJ should have called upon a vocational expert to determine whether there was available work that Green could perform in light of her nonexertional impairments.  *Baker*, 2008 WL 3980986, at \* 6.

Green asks that the Court remand the case for an award of benefits.  An award of benefits is appropriate only when the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  In this case, the Commissioner has not consulted a vocational expert to determine whether there is work available in the national economy that Green can perform.  Therefore, the Commissioner has not yet considered essential evidence.  Accordingly, remand for further proceedings is required.

On remand, the Commissioner should require the ALJ to state the weight given to each of the opinions in the record.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  The ALJ should also address the exertional and nonexertional limitations

arising from all of Green's impairments, including complaints of side effects of medication. If the ALJ again determines that Green cannot perform any of her past relevant work and she has nonexertional limitations, testimony of a vocational expert is preferred to determine whether there is other work available that Green can perform. *See, e.g., Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996).[1]

### CONCLUSION.

For the reasons set forth herein, it is **ORDERED** that the decision of the Commissioner is **REVERSED** pursuant to sentence four of § 405(g) and the case is **REMANDED** to the Commissioner for further proceedings. The Clerk of Court is directed to issue a judgment consistent with this Order and, thereafter, to close the file.

**DONE** and **ORDERED** this 15th day of August, 2012.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

---

[1] Additionally, if review of the decision on remand by a court is sought, it is **ORDERED** that the Commissioner must collate the pages of the transcript so that the English translation of the record immediately precedes or follows the original record written in Spanish. This is necessary because the translator often adopts part of the original record by reference -- without quoting it -- in translation of medical records. *See, e.g.,* R. 523 (referring to "Rx as stated"); R. 529 (referring to name of physican as stated in original record).